# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ALFONSO MARIO GONZALES, JR.,**

    **Plaintiff,**

    vs.                                         Civ. No. 16-1354 KK

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 16) filed May 10, 2017, in support of Plaintiff Alfonso Mario Gonzales, Jr.'s ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income benefits. On July 7, 2017, Plaintiff filed his Motion to Reverse and Remand to Agency for Rehearing With Supporting Memorandum ("Motion"). (Doc. 19.) The Commissioner filed a Response in opposition on September 7, 2017 (Doc. 21), and Plaintiff filed a Reply on September 22, 2017. (Doc. 22.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 11, 13.)

## I. Background and Procedural Record

Claimant Alfonso Mario Gonzales, Jr. ("Mr. Gonzales") alleges that he became disabled on September 12, 2012, at the age of thirty-three because of back, neck and knee injuries, asthma, post-traumatic stress syndrome, severe headaches, anxiety, and dizziness. (Tr. 30, 76, 239.[3]) Mr. Gonzales completed the eighth grade, and worked as a busboy, dishwasher, and warehouse worker. (Tr. 240, 241, 250-52.) Mr. Gonzales reported he stopped working on March 1, 2003, because of his medical conditions. (Tr. 239.)

On September 1, 2012, Mr. Gonzales protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 210-15, 235.) Mr. Gonzales's application was initially denied on December 12, 2012. (Tr. 76-87, 88, 106-109.) It was denied again at reconsideration on August 30, 2013. (Tr. 89-104, 105, 115-19.) On October 8, 2013, Mr. Gonzales requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 120-22.) ALJ Donna Montano conducted a hearing on June 2, 2015. (Tr. 27-75.) Mr. Gonzales appeared in person at the hearing with attorney representative Gary Martone. (*Id.*) The ALJ took testimony from Mr. Gonzales (Tr. 30-63, 67-71), and an impartial vocational expert ("VE") (Tr. 63-66, 72-74). On June 30, 2015, the ALJ issued an unfavorable decision. (Tr. 8-21.) On October 11, 2016, the Appeals Council issued its decision denying Mr. Gonzales's request for review and upholding the ALJ's final decision. (Tr. 1-5.) On December 13, 2016, Mr. Gonzales timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 16) that was lodged with the Court on May 10, 2017.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

3

> demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion."

*Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Gonzales was not disabled at step five of the sequential evaluation. (Tr. 19-20.) Specifically, the ALJ found that Mr. Gonzales had not engaged in substantial gainful activity since his application date of September 12, 2012,[5] and had severe impairments of obesity, anxiety disorder, asthma, post-traumatic stress disorder, and pain disorder. (Tr. 13.) The ALJ, however, determined that Mr. Gonzales's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. (Tr. 13-15.) As a result, the ALJ proceeded to step four and found that Mr. Gonzales had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 416.967(b). Specifically,

> the claimant is able to lift up to 20 pounds occasionally, lift or carry up to ten pounds frequently, stand or walk for approximately six hours in an eight-hour workday and sit for approximately six hours in an eight-hour workday, with normal breaks. He should avoid concentrated exposure to fumes odors dust and gasses. From a mental standpoint, the claimant is limited to work involving only

---

[5] There is no retroactivity for Title XVI payments. Therefore, the earliest possible established onset date in a Title XVI claim is the application filing date or protective filing date. *See* POMS DI 25501.370.A.1. – *The Established Onset Date for Title XVI Claims*.

simple routine tasks with little to no changes in the work setting. He can make commensurate work related decisions and respond appropriately to coworkers and supervisors, but contact with co-workers should only be superficial.

(Tr. 15.) The ALJ further concluded at step four that Mr. Gonzales had no past relevant work. (Tr. 19.) The ALJ determined at step five based on Mr. Gonzales's age, education, work experience, RFC, and the testimony of the VE, that there were jobs existing in significant numbers in the national economy that Mr. Gonzales could perform. (Tr. 19-20.) For this reason, the ALJ determined that Mr. Gonzales was not disabled. (Tr. 20.)

In support of his Motion, Mr. Gonzales argues that (1) the ALJ failed to properly consider the State agency psychological consultant opinion evidence; and (2) the ALJ failed to properly consider Mr. Gonzales's obesity. (Doc. 19 at 7-12.) For the reasons discussed below, the Court finds there is no reversible error.

### A. State Agency Psychological Consultant Opinion Evidence

#### 1. State Agency Examining Psychological Consultant Mark Simpson, PsyD, LADAC

On December 15, 2012, Mr. Gonzales presented to Mark Simpson, PsyD, for a mental status consultative examination. (Tr. 390-92.) Dr. Simpson initially noted that Mr. Gonzales did not appear to have difficulty with balance, walking, or sitting, and that there was no evidence of pain behaviors during the approximately one hour evaluation. (Tr. 390.) Dr. Simpson indicated that Mr. Gonzales was cooperative throughout the evaluation. (*Id.*)

Mr. Gonzales reported a long history of depression, anger, anxiety, learning difficulties, difficulties with concentration, and chronic neck and back pain. (*Id.*) He also reported that anxiety attacks had resulted in three emergency room visits the previous year.[6] (*Id.*) Mr. Gonzales told Dr. Simpson that he had been stabbed twice in his torso, once in 1985 and

---

[6] The Administrative Record does not contain evidence of Mr. Gonzales's reported ER visits.

once in 2006, and was in a motor vehicle accident in 2009, which resulted in injuries to his back, knee and neck, and caused headaches. (Tr. 391.) Mr. Gonzales stated he had not worked since 2003 due to his injuries. (*Id.*) Mr. Gonzales stated he had been arrested five or six times for being with a friend who had drugs, and arrested once for being involved in a shooting. (*Id.*)

On mental status exam, Dr. Simpson observed that Mr. Gonzales was (1) oriented to person, date, place, and to the reason he was being evaluated, and that there was no evidence of psychomotor agitation or retardation. (Tr. 391.) He noted that (1) Mr. Gonzales's mood was depressed and his affect was constricted; (2) he presented as being undereducated; (3) his thought process was linear and goal directed; and (4) his insight and judgment were good. (*Id.*) Dr. Simpson indicated there was no evidence of perception abnormalities, and no evidence of suicidal and/or homicidal ideations. (*Id.*)

Dr. Simpson's Axis I diagnosis was post-traumatic stress disorder, chronic, and he assessed a GAF score of 53.[7] (Tr. 391.) Dr. Simpson's impression was that Mr. Gonzales was challenged by "chronic pain, asthma, headaches, and by PTSD" and that it appeared "that these challenges will make it more difficult to seek, obtain, and maintain employment." (Tr. 392.) As to Mr. Gonzales's mental functional limitations, Dr. Simpson assessed that Mr. Gonzales had *mild* limitations in his ability (1) to understand and remember very short and simple instructions; and (2) to be aware of normal hazards in the workplace. (*Id.*) He further assessed that Mr. Gonzales had mild-to-moderate limitations in his ability (1) to understand and remember detailed or complex instructions; (2) to carry out instructions; (3) to attend and concentrate;

---

[7] A GAF score is a subjective rating on a one hundred point scale, divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders,* 32, 34 (4th ed. 2000). A GAF score of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.* at 34.

(4) to work without supervision; (5) to interact with the public; (6) to interact with co-workers; (7) to interact with supervisors; (8) to adapt to changes in the workplace; and (9) to use public transportation to travel to unfamiliar places. (*Id.*)

### 2. State Agency Nonexamining Psychological Consultant Howard G. Atkins, Ph.D.

On August 30, 2013, Howard G. Atkins, Ph.D., reviewed Mr. Gonzales's medical records at reconsideration.[8] (Tr. 96, 100-102.) Dr. Atkins restated Dr. Cox's explanation related to Mr. Gonzales's alleged mental impairments (*see* fn. 8, *supra*), and explained further that

> [a]fter the Initial mental assessment was completed, an MSCE was performed 12/15/12 where [claimant] reported 3 emergency room visits over the previous year due to anxiety attacks. MSE reflect mild-moderate limitations. CE examiner cites diagnosis of PTSD, chronic with GAF=53. Examiner notes conditions, mostly physical, would make it difficult for the [claimant] to maintain employment. While mental symptoms may restrict the [claimant] somewhat, they would not wholly compromise his ability to function in a work setting. See MRFC.

(Tr. 96.)

Dr. Atkins prepared a Mental Residual Functional Capacity Assessment and indicated that Mr. Gonzales was *not significantly limited* in his ability (1) to remember locations and work-

---

[8] State agency nonexamining psychological consultant Dan Cox, Ph.D., reviewed Mr. Gonzales's medical records at the initial level of application review. (Tr. 81.) He explained that

> [Claimant] alleging PTSD, and anxiety D/O. He has no mental health provider, no hx of hospitalization for mental impairment. His orthopedic doctor notes that he may have mild depressive symptoms but then states it is out of his expertise. [Claimant] alleges that he is unable to do anything on his ADL form. However it should be noted that w/regard to the physical side, [claimant] was found to be fully exaggerating his symptoms in relation to his near normal objective medical evidence.
>
> 8/12/12 PE, Psych notes NML mood/affect. Behavior is normal. Thought content is normal. Judgment is normal. AOx3.
>
> FTF interview: Neat and well groomed. Casually dressed, polite. [Claimant states] unable to complete the app and report b/c he gets headaches when he reads.
>
> No MDI.

(Tr. 81.)

like procedures; (2) to understand and remember very short and simple instructions; (3) to carry out very short and simple instructions; (4) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) to sustain an ordinary routine without special supervision; (6) to work in coordination with or in proximity to others without being distracted by them; (7) to make simple work-related decisions; (8) to ask simple questions or request assistance; (9) to get along with coworkers or peers without distracting them or exhibit behavioral extremes; (10) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (11) to be aware of normal hazards and take appropriate precautions; (12) to travel in unfamiliar places or use public transportation; and (13) to set realistic goals or make plans independently of others. (Tr. 100-102.) Dr. Atkins also indicated that Mr. Gonzales was *moderately limited* in his ability (1) to understand and remember detailed instructions; (2) carry out detailed instructions; (3) to maintain attention and concentration for extended periods; (4) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) to interact appropriately with the general public; (6) to accept instructions and respond appropriately to criticism from supervisors; and (7) to respond appropriately to changes in the work setting. (*Id.*) Dr. Atkins assessed that

> [o]verall, claimant should be able to meet the basic mental demands of competitive, remunerative, simple work on a sustained basis, particularly in settings of low social contact, including the abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of simple work, *i.e.,* simple work-related decisions; respond appropriately to supervision, coworkers and work situations; & deal with changes in a routine work setting if introduced gradually.

(Tr. 102.)

9

### 3. ALJ's Mental RFC

The ALJ assessed that from a mental standpoint, Mr. Gonzales was

> limited to work involving only simple routine tasks with little to no changes in the work setting. He can make commensurate work related decisions and respond appropriately to coworkers and supervisors, but contact with co-workers should only be superficial.

(Tr. 15.) In making her assessment, the ALJ accorded significant weight to Dr. Simpson's opinion that Mr. Gonzales experienced no more than mild to moderate limitations in any functional area. (Tr. 18.) The ALJ explained that Dr. Simpson's opinion was consistent with the lack of any mental health treatment in the record, and supported by Dr. Simpson's treatment notes that indicated negative psychiatric symptoms. (*Id.*) The ALJ also accorded some weight to Dr. Atkins' opinion. (Tr. 19.)

Mr. Gonzales argues that the ALJ rejected certain of Dr. Atkins' findings without explanation. (Doc. 19 at 8-9.) Specifically, Mr. Gonzales asserts that Dr. Atkins assessed that Mr. Gonzales should have limited social contact, but that the ALJ only limited Mr. Gonzales's contact with co-workers and not with supervisors and the public. (*Id.*) Mr. Gonzales further asserts that Dr. Atkins assessed that Mr. Gonzales could deal with changes in a routine work setting if introduced gradually, but that the ALJ's RFC provided only for little to no changes in the work setting. (*Id*.) Mr. Gonzales also argues that the ALJ failed to provide what weight she attributed to Dr. Simpson's opinion and failed to use the required regulatory factors in doing so. (*Id.*) Conceding in his Reply that the ALJ weighed Dr. Simpson's opinion, Mr. Gonzales newly asserted that the ALJ limited Mr. Gonzales's contact with co-workers, but failed to incorporate, without explanation, Dr. Simpson's mild to moderate limitations related to contact with supervisors and the public. (Doc. 22 at 2.) The Commissioner contends that although the ALJ did not adopt Dr. Atkins' mental RFC assessment verbatim, the ALJ fully accounted for all of

Dr. Atkins' assessed mental limitations. (Doc. 21 at 10-11.) The Commissioner further contends that the ALJ did weigh Dr. Simpson's opinion, provided valid reasons for the weight she accorded, and that the ALJ's RFC fully accounts for Dr. Simpson's assessed mental limitations. (*Id.* at 11-12.)

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215. Specifically, when assessing a claimant's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183 at *5.[9] "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin*, 365 F.3d at 1215 (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[10] An ALJ need not articulate every factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183 at *5 (emphasis added); *see Keyes-Zachary v Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii))).

---

[9] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5845, 5867, 5869.

[10] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. § 416.927(c)(2)-(6) (evaluating opinion evidence for claims filed before March 27, 2017).

### a. The ALJ Properly Evaluated the State Agency Psychological Consultant Opinions

As an initial matter, contrary to Mr. Gonzales's argument in his Motion, the ALJ weighed Dr. Simpson's opinion and accorded it significant weight. (Tr. 18.) In doing so, the ALJ explained that Dr. Simpson's opinion was consistent with the record as a whole and supported by Dr. Simpson's treatment notes. (*Id.*) These are specific factors to be considered in determining what weight to give a medical opinion. *See* 20 C.F.R. 416.927(c)(3) and (4) (the more a medical source presents relevant evidence to support a medical opinion and the more consistent the opinion with the record as whole, the more weight it will be given).[11] The ALJ did not err in weighing Dr. Simpson's opinion or applying the required regulatory factors in doing so. *Oldham,* 509 F.3d at 1258 (an ALJ need not articulate every factor).

The ALJ also weighed Dr. Atkins' opinion, according it some weight. (Tr. 19.) Although the ALJ did not provide an explanation for the weight she accorded Dr. Atkins' opinion, as discussed below, there is no inconsistency between Dr. Atkins' opinion and the ALJ's mental RFC assessment. As such, any error is harmless. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (finding that when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened); *see also Mays v. Colvin*, 739 F.3d 569, 579 (10th Cir. 2014) (finding that an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of RFC).

---

[11] The rules in this section apply for claims filed *before* March 27, 2017. 20 C.F.R. § 416.927.

### b. The ALJ's Mental RFC Regarding Mr. Gonzales's Ability to Adapt in the Workplace Is Not Inconsistent With Dr. Atkins' Assessment

Dr. Atkins assessed that Mr. Gonzales could "deal with changes in a routine work setting if introduced gradually." (Tr. 102.) The ALJ in turn assessed that Mr. Gonzales could have "little to no changes in the work setting."[12] (Tr. 15.) Although the ALJ did not repeat verbatim Dr. Atkins' narrative, the Court is persuaded that the ALJ sufficiently captured the essence of Dr. Atkins' assessed limitation. *See Carver v. Colvin*, 600 F. App'x 616, 619-20 (10th Cir. 2015) (finding that the ALJ sufficiently captured essence of consultative examiner's narrative and need not repeat it verbatim). Moreover, Mr. Gonzales has failed to demonstrate precisely how a limitation to changes introduced gradually is *more* restrictive than little to no changes.

### c. The ALJ's Failure to Include Specific Limitations Related to Mr. Gonzales's Ability to Interact With Supervisors and the Public Is Harmless Error

Dr. Atkins stated in his narrative that Mr. Gonzales "should be able to meet the basic mental demands of competitive, remunerative, simple work on a sustained basis, particularly in settings of low social contact[.]" (Tr. 102.) Dr. Atkins went on to assess, however, that Mr. Gonzales could "respond appropriately to supervision, coworkers and work situations." (*Id.*) The ALJ in turn assessed that Mr. Gonzales could "respond appropriately to coworkers and supervisors, but contact with co-workers should only be superficial." (Tr. 15.) As such, the ALJ's mental RFC is not inconsistent with Dr. Atkins' assessment.

Dr. Simpson assessed that Mr. Gonzales had mild to moderate limitations in his ability to interact with co-workers, supervisors, and the public. (Tr. 392.) While the ALJ did not explain why she only limited Mr. Gonzales's social interaction with co-workers and not with supervisors

---

[12] Dr. Simpson assessed that Mr. Gonzales had mild to moderate limitations in his ability to adapt to changes in the workplace. (Tr. 392.)

and the public, the Court is not persuaded this is grounds for remand here. Based on Mr. Gonzales's age, education, work experience, RFC, and VE testimony, the ALJ identified three jobs Mr. Gonzales could perform; *i.e.,* assembler, DOT 706.684-022; laundry sorter, DOT 361.687-014, and inspector hand packager, DOT 559.687-074. Appendix B of the DOT specifies that the fourth, fifth, and sixth digits of the code reflect "relationships to Data, People, and Things, respectively . . . [and] express a job's relationship to Data, People and Things by identifying the highest appropriate function in each listing shown." *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701. The "People" category has a range from zero to eight, with zero requiring the highest level of human interaction and eight requiring the lowest. *Id.*; *see also Lane v. Colvin*, 643 F. App'x 766, 770, n. 1 (10th Cir. 2016). The DOT specifies that eight corresponds to a worker function of "Taking Instructions – Helping," which is defined as "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." *Appendix B,* 1991 WL 688701. Here, each of the jobs the ALJ identified has a "people" requirement of eight; *i.e.,* the lowest level of human interaction. As such, the jobs identified do not involve frequent or involved interaction with co-workers, supervisors, or the public. *Lane*, 643 F. App'x at 770; *see also Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) (describing the talking demands for Assembler, Laundry Sorter and Hand Packager as "not present"), *available at* https://www.nosscr.org/sco/sco-ocr.pdf, pp. 203, 204 and 284. Hence, the ALJ's failure to include a limitation specifically related to Mr. Gonzales's interaction with supervisors and the public is harmless error. *Id.; see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding harmless error when the Court can confidently say that based on the material the ALJ

14

considered that no reasonable administrative factfinder, following the correct analysis, could have resolved the actual matter in any other way).

For all of the foregoing reasons, the Court finds that the ALJ properly evaluated the State agency psychological opinion evidence and that the ALJ's mental RFC assessment is supported by substantial evidence.

### B.  Obesity

The ALJ determined at step two that Mr. Gonzales's obesity was severe. At step four, the ALJ stated that she

> considered the claimant's obesity in accordance with SSR 02-1p. The claimant testified that no doctor has recommended that he lose weight to help alleviate his back and knee problems.[13] He stated he has been eating better however, in an attempt to lose weight. Nevertheless, while the claimant may have some difficulty in performing more strenuous activity on a regular basis, the claimant's obesity does not preclude him from performing work activities at a lesser exertional level.

(Tr. 17.) Mr. Gonzales argues that the ALJ failed to properly consider his obesity at step three, and failed to consider the specific impact of Mr. Gonzales's obesity at step four in violation of SSR 02-1p. (Doc. 19 at 10-12.) The Commissioner contends that the ALJ properly considered Mr. Gonzales's obesity, which was reflected in the ALJ's decision and the RFC. (Doc. 21 at 12-15.) The Court agrees with the Commissioner.

SSR 02-1p explains how obesity is considered in the sequential evaluation process. SSR 02-1p, WL 34686281, *3. Obesity is generally established as a medically determinable impairment when a physician and/or consultative examiner has diagnosed it. *Id.* At step two, "we will find that obesity is a 'severe' impairment when, alone or in combination with another

---

[13] On the contrary, on March 23, 2010, Dr. John Ray of New Mexico Orthopaedics noted that he talked with Mr. Gonzales briefly about weight loss and that weight was contributing to his back pain. (Tr. 334-35.)

medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."[14] *Id.* at *4. At step three,

> [b]ecause there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.
>
> . . .
>
> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

*Id.* at *5-6; *see also DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02-1.) At steps four and five, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6.

      **1.**      <u>**The ALJ's Failure to Discuss Mr. Gonzales's Obesity at Step Three Is Harmless Error**</u>

In *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir 2005), the Tenth Circuit held that an ALJ's conclusion at step three that a claimant's impairments do not meet or equal any listing, while failing to discuss particular evidence, may be upheld if the ALJ's findings at other steps of the sequential process provide a proper basis for doing so. *Id.* at 733-35. That is the case here. While the ALJ stated at step three that she found that the "opinions of state agency physicians that the claimant's impairments neither met nor equaled the severity of a listed impairment

---

[14] An ALJ's findings at step two require only a "de minimis" showing of impairment. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *see also Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (stating that if a claimant is able to show that his impairment would have more than a minimal effect on his ability to do basic work activity he has made a *de minimis* showing).

[were] well reasoned and supported by the evidence of record,"[15] she did not specifically discuss Mr. Gonzales's obesity. (Tr. 14.) However, at step four, the ALJ determined that Mr. Gonzales retained the capacity for less than full range of light work (Tr. 15), a finding Mr. Gonzales has not challenged. Additionally, the Court has found that the ALJ's mental RFC is supported by substantial evidence. *See* Section III.A.3, *supra*. As such, the ALJ's findings at step four clearly reject any notion that Mr. Gonzales meets a listing at step three. *See Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) (unpublished)[16] (finding that the ALJ's RFC finding that the claimant retained the capacity for sedentary work negated the possibility of any finding that claimant was conclusively disabled at step three, and, therefore, any deficiency in the ALJ's step three analysis was harmless error) (citing *Fisher-Ross*, 431 F.3d at 734-35)). Further, Mr. Gonzales has not suggested or pointed to any evidence in the record to support that any of his impairments, in combination with his obesity, meet all the requirements of a particular listing that the ALJ ignored or should have considered. The ALJ's RFC findings conclusively negate the possibility of any finding that Mr. Gonzales is presumptively disabled under any pertinent listing. *Fischer-Ross*, 431 F.3d at 735. As such, any deficiency in the ALJ's articulation of her reasoning to support her step three determination is harmless and does not require remand. *Id.*

### 2. **The ALJ Properly Considered Mr. Gonzales's Obesity at Step Four**

Mr. Gonzales relies on the Tenth Circuit's decision in *DeWitt v. Astrue*, 381 F. App'x 782 (10th Cir. 2010) to argue that the ALJ relied on her own assumptions about the severity or functional effects of Mr. Gonzales's obesity instead of discussing the evidence at step four.

---

[15] State agency nonexamining medical consultant Kenneth Glass, M.D., considered Mr. Gonzales's obesity in conjunction with Listing 1.02 *Major dysfunction of a joint(s) (due to any cause)* and determined that Mr. Gonzales retained the ability to perform medium exertional work. (Tr. 95, 97-100.)

[16] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

(Doc. 19 at 11-12.)  *DeWitt*, however, is distinguishable.  In that case, the ALJ gave "considerable weight" to a physician's testimony when formulating the claimant's RFC.  *Id.* at 785.  "But in doing so, the ALJ mistakenly believed that [the physician] had identified obesity as one of DeWitt's medical conditions.  In fact, [the physician] offered no opinion about the functional effects of DeWitt's obesity . . . [h]e simply never mentioned obesity."  *Id.*  Thus, the Tenth Circuit concluded that the ALJ could not rely on [the physician's] testimony to "satisfy the duty to consider the effects of DeWitt's obesity on her other severe impairments."  *Id.*  That is not the case here.

Here, although Mr. Gonzales did not raise obesity as an alleged impairment or limitation in either his application or at the administrative hearing, the ALJ nonetheless determined that Mr. Gonzales's obesity was severe based on the medical record evidence.  (Tr. 13.)  In her step four analysis, the ALJ discussed all of Mr. Gonzales's medical record evidence.  (Tr. 15-18.)  The ALJ also set forth and applied the standard for considering Mr. Gonzales's obesity and concluded that while Mr. Gonzales "may have some difficulty performing more strenuous activity on a regular basis, [his] obesity does not preclude him from performing work activities at a lesser exertional level."  (Tr. 17.)  The ALJ further concluded that the evidence supported a pain-producing mild to moderate upper and lower back and knee impairment, and that she had not discounted Mr. Gonzales's subjective complaints, but that Mr. Gonzales's conditions were not of a relative severity, individually, *or cumulatively* to eliminate work with lesser exertional requirements.  (Tr. 18.)

Importantly, Mr. Gonzales does not identify any evidence, nor can the Court find any, to support that his obesity causes further limitations that would preclude his performing less than a full range of light work.  *See DeWitt*, 381 F. App'x at 785 (the ALJ will not make assumptions

about the severity or functional effects of obesity combined with other impairments). Moreover, subsequent case law after *DeWitt* demonstrates that Mr. Gonzales's failure to identify any evidence to support greater functional limitations is fatal to his claim of error. In *Arles v. Astrue*, 438 F. App'x 735 (10th Cir. 2011) (unpublished), the claimant argued that the ALJ "failed to include his obesity in the RFC determination." *Id.* at 740. While the Tenth Circuit observed that "[t]he ALJ could have provided a more particularized discussion of the effects of Mr. Arles's obesity," the court found that the ALJ examined the medical records, stated that the claimant's obesity had been evaluated under the criteria set forth in SSR 02-1p,[17] and "[m]oreover, Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work." *Arles*, 438 F. App'x at 740. The court, therefore, found no error. *Id.* In *Smith v. Colvin*, 625 F. App'x 896 (10th Cir. 2015), the claimant argued that the ALJ failed to properly consider her obesity in formulating her RFC. *Id.* at 899. The Tenth Circuit held that an ALJ is not required for each piece of evidence discussed to note the absence of any evidence that obesity resulted in additional functional limitations or exacerbated any other impairment. *Id.* The Tenth Circuit also concluded that the claimant had "not shown that her obesity alone, or in combination with other impairments, resulted in any further limitation" than that assessed by the ALJ. *Id.* As such, the court found no error. *Id.* Finally, in *Rose v. Colvin*, 634 F. App'x 632 (10th Cir. 2015) (unpublished), the claimant argued that "although the ALJ found her obesity to be a severe impairment, he failed to properly consider its effects in formulating her RFC." *Id.* at 637. The Tenth Circuit acknowledged that "[t]he ALJ did not specifically mention obesity in the RFC determination," but, instead, included certain specific postural limitations. *Id.* The court further reasoned that the claimant had failed

---

[17] The Tenth Circuit stated that the court's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Arles*, 438 F. App'x at 740 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

to point to any medical evidence indicating that her obesity resulted in greater functional limitations than those assessed, and that the claimant had not described any limitations due to her obesity during her hearing testimony. *Id.* The Tenth Circuit concluded that the factual record did not support the claimant's position that her obesity, either alone or in combination with other conditions, precluded her from performing a limited range of sedentary work as assessed. *Id.* Similarly, Mr. Gonzales has failed to point to any medical evidence indicating his obesity results in greater functional limitations than those the ALJ assessed.

For the foregoing reasons, the Court finds that the ALJ's step four findings justify her step three conclusion that Mr. Gonzales's impairments, alone or in combination with other impairments, did not meet or equal in severity one the listings described in Appendix 1 of the regulations. As such, the ALJ's failure to specifically discuss Mr. Gonzales's obesity at step three is harmless error. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (finding that no "remand for a more thorough discussion of the listings" at step three is required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step-three determination under review."). The Court further finds that the ALJ properly considered Mr. Gonzales's obesity at step four and that the ALJ's step four findings are supported by substantial evidence.

## IV. Conclusion

For the reasons stated above, Mr. Gonzales's Motion to Reverse and Remand to Agency for Rehearing With Supporting Memorandum (Doc. 19) is **DENIED.**

_/s/ Kirtan Khalsa_
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**